UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KIMBERLY I.

                              Plaintiff,

v.                                                                                          1:20-CV-1753
                                                                                            (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                                    OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC          KENNETH HILLER, ESQ.
  Counsel for Plaintiff                                       ANTHONY ROONEY, ESQ.
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                         JOHANNY SANTANA, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 14.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

### I.      RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1965. (T. 72.) She completed high school. (T. 217.) Generally, Plaintiff's alleged disability consists of back injury, arthritis, high blood pressure, angular glaucoma, manic depressive disorder, fatty liver, asthma, fibroids, degenerative disc disease, and a learning disability. (T. 70.) Her alleged disability onset date is January 1, 2014. (T. 72.) Her date last insured is September 30, 2014. (*Id.*) She has no past relevant work. (T. 24.)

### B. Procedural History

On February 13, 2018, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 72.) Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On January 14, 2020, Plaintiff appeared before the ALJ, David Begley. (T. 31-67.) On March 3, 2020, ALJ Begley issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 12-29.) On October 2, 2020, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 18-25.) First, the ALJ found Plaintiff met the insured status requirements through September 30, 2014, and Plaintiff had not engaged in substantial gainful activity since January 1, 2014. (T. 18.) Second, the ALJ found Plaintiff had the

2

severe impairments of lumbar spine degenerative disc disease, depression, and anxiety. (*Id.*) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (*Id.*) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform: light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except Plaintiff is:

> prohibited from climbing ladders, ropes, or scaffoldings; further limited to only occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching, or crawling; would need to avoid concentrated exposure to extreme cold, concentrated exposure to irritants, such as fumes and odors, dust, gases, poorly ventilated areas; would need to avoid concentrated exposure to hazardous machinery, unprotected heights, and open flames; further limited to simple, routine, and repetitive tasks, working in a low-stress job, which would be defined as free of fast-paced production requirements, with no hazardous conditions; only occasional decision making required; only occasional changes to the work setting; and only occasional interaction with coworkers, supervisors, and the general public.

(T. 20.)[1] Fifth, the ALJ determined Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 24-25.)

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff makes one argument in support of her motion for judgment on the pleadings. Plaintiff argues the ALJ erred in formulating the mental portion of the RFC

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

3

absent a medical opinion.  (Dkt. No. 11 at 10-17.)  Plaintiff also filed a reply in which she deemed no reply necessary.  (Dkt. No. 13.)

### B. Defendant's Arguments

In response, Defendant makes two arguments.  First, Defendant argues the ALJ considered the totality of the evidence in assessing Plaintiff's mental RFC and substantial evidence supports his findings.  (Dkt. No. 12 at 11-15.)  Second, and lastly, Defendant argues the record was fully developed.  (*Id.* at 15-19.)

## III. RELEVANT LEGAL STANDARD

### B. Standard of Review

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The "substantial evidence" standard "means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "[I]t is . . . a very deferential standard of review - even more so than the 'clearly erroneous' standard."  *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012).  In particular, it requires deference "to the Commissioner's resolution of conflicting evidence."  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). It is not the Court's "function to determine *de novo* whether a plaintiff is disabled." *Brault,* 683 F.3d. at 447.  "In determining whether the agency's findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks omitted).  "If evidence is susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "The substantial evidence standard means once an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.' " *Brault,* 683 F.3d at 448.  The Court "require[s] that the crucial factors in any determination be set forth with sufficient specificity to enable [the reviewing Court] to decide whether the determination is supported by substantial evidence." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (alterations and internal quotation marks omitted).

      **C.**      **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Schillo v. Kijakazi*, 31 F.4th 64, 70 (2d Cir. 2022).

**IV.**      **ANALYSIS**

Plaintiff argues "the only opinion from a mental health practitioner was the non-examining review of Dr. Juriga, who found no severe impairments. As such, the ALJ's

ultimate RFC determination, which included numerous mental limitations, was unsupported by substantial evidence." (Dkt. No. 11 at 10.)  Plaintiff asserts, the ALJ erred as a matter of law in forming a highly specific RFC "divorced from an opinion" even if the RFC "cuts in [Plaintiff's] favor." (*Id.* at 13.)  Plaintiff only asserts the ALJ erred in formulating the mental portion of the RFC determination; therefore, for ease of discussion and analysis only the relevant portions of the decision and record evidence will be discussed.  For the reasons outlined below, the ALJ did not commit legal error in formulating an RFC absent a medical opinion.

The RFC is an assessment of "the most [Plaintiff] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  An RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ.  *Id.* §§ 404.1545(a)(1), 416.945(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."), *see id.* §§ 404.1546(c), 1416.946(c) ("the administrative law judge or the administrative appeals judge at the Appeals Council . . . is responsible for assessing your residual functional capacity"); *see Curry v. Comm'r Soc. Sec.*, No. 20-1472, -- F. App'x ---, 2021 WL 1942331, *2n.3 (2d Cir. May 14, 2021.)  Additionally, the regulations direct an ALJ to "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." *Id.* §§ 404.4520c, 416.920c.

Contrary to Plaintiff's assertion, a medical opinion or administrative finding is not required to provide substantial evidence to support an RFC.  Substantial evidence "means - and means only - such relevant evidence as a reasonable mind might accept

6

as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).  The Second Circuit has held that where, "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 8 (2d Cir. 2017) (internal quotations and citation omitted); *see Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

Here, the ALJ did not draw medical conclusions; instead, and pursuant to his statutory authority, the ALJ considered the medical and other evidence in the record in its totality to reach an RFC determination.  *Curry*, 2021 WL 1942331 at *2n.3.  Although the record concerning Plaintiff's mental health was sparse, the ALJ based his RFC determination on the information provided, and substantial evidence supported the ALJ's determination.  As held in *Biestek v. Berryhill*, substantial evidence is "more than a mere scintilla" and "means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (internal citations and quotations omitted); *see also Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015) (summary order) ("A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of

benefits."). The record contained "more than a mere scintilla" of evidence regarding Plaintiff's functional abilities and the ALJ's analysis of the evidence in the record was adequate to establish a link between the evidence and the RFC.

On April 23, 2018, non-examining State agency medical consultant, S. Juriga, Ph.D., examined the available evidence and concluded there was "insufficient evidence in file for the time period." (T. 74.) At the time of her review, Plaintiff was only seeking benefits for SSD. (*Id.*)[2] Dr. Juriga noted the relevant period for Plaintiff's SSD claim was from the alleged onset date, January 1, 2014, through the date last insured, September 30, 2014. (T. 74.) The ALJ found Dr. Juriga's conclusion persuasive, because, as Plaintiff's own summary of the medical evidence demonstrates, there was no evidence related to Plaintiff's mental impairments during that time. (Dkt. No. 11 at 4-8.)[3] Therefore, the ALJ properly found Dr. Juriga's finding, that there was insufficient evidence to support mental health claims between January 1, 2014, and September 20, 2014, persuasive.

In addition to Dr. Juriga's finding, the ALJ relied on objective evidence in the record and Plaintiff's statement to sources in assessing her ability to perform the mental demands of work. In his step two discussion and analysis, the ALJ considered the functional limitations stemming from Plaintiff's mental impairments. (T. 19-20.) The four functional areas, or "paragraph B criteria," represent the areas of mental functioning a person uses in a work setting. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(A)(2)(b).

---

[2] Plaintiff subsequently filed for SSI benefits on May 21, 2019. (T. 179-180.)

[3] A notation dated December 4, 2014, indicates Plaintiff was prescribed medication for depression "at the last visit and has been doing better but still feels very anxious at times." (T. 426.) At the time of the notation Plaintiff was working as a housekeeper. (*Id.*) A notation from February 16, 2015, indicated Plaintiff had been taking medication for her depression for two weeks. (T. 412.)

paragraph B criteria are: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id*. An ALJ will determine the degree to which plaintiff's medically determinable mental impairment affects the four areas of mental functioning and plaintiff's ability to function independently, appropriately, effectively, and on a sustained basis. *Id*. To be sure, paragraph B criteria are not an RFC assessment "but are used to rate the severity of mental impairment(s) at steps 2 and 3 . . . the mental RFC assessment used at steps 4 and 5 . . . requires a more detailed assessment." SSR 96-8p, 1996 WL 374184, at *4. However, the ALJ's reasoning at step two can "permit[] the Court to glean the rationale of an ALJ's decision." *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983)). The ALJ acknowledged that his analysis of the paragraph B criteria was not an RFC assessment. (T. 20.) However, the ALJ noted that his RFC assessment reflected the "degree of limitation" found in the paragraph B analysis. (*Id.*)

The ALJ concluded Plaintiff had moderate limitations in her ability to understand, remember, or apply information. (T. 19.) The ALJ credited Plaintiff's testimony and statements that she had difficulty remembering things generally, following instructions, and taking medication without reminders. (*Id.*) She kept track of her medications and other personal needs using notes and a calendar. (T. 237.) She was able to prepare and follow instructions on ready-to-eat meals, borrow movies and books from the library, and drive to get groceries. (T. 38, 230, 236-237.) Plaintiff also cared for her twelve cats including providing food, water, grooming, and cleaning litter boxes. (T. 238, 496, 499.) Treatment notes demonstrated Plaintiff was able to provide adequate

medical history and treatment information to her providers and comply with treatment outside of the office.  (T. 19, 21-22.)  Moreover, there was no objective evidence documenting memory issues during the relevant periods.  (T. 19.)

The ALJ assessed moderate imitations in Plaintiff's ability to concentrate, persist, or maintain pace, crediting her testimony and statements regarding difficulty concentrating generally and following instructions.  (T. 19.)  She reported difficulty working on a production line due to feeling rushed.  (T. 235, 1617.)  Treatment notes documented poor to fair concentration but did not otherwise document formal testing of her concentration abilities.  (T. 19.)  The ALJ noted Plaintiff reported the ability to drive, shop for groceries, take care of her pets, use Facebook, and attend concerts once a month.  (*Id.*)

To account for Plaintiff's moderate limitations in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace, the ALJ limited her to simple, routine, and repetitive tasks, low stress jobs that were free of fast-paced production requirements and hazardous conditions, occasional decision-making, and occasional changes to the work setting.  (T. 20); *see McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) (finding that a limitation to unskilled work accounted for moderate limitations in concentration, persistence, and pace).

With respect to interacting with others, the ALJ determined Plaintiff had moderate limitations.  (T. 19.)  The ALJ noted Plaintiff's difficulty getting along with others both within and outside of the work setting and that dealing with people triggered her anxiety.  (T. 19, 21-22.)  The record also demonstrated Plaintiff was able to shop in grocery stores, use her cell phone to go on Facebook or text friends, go to concerts once a

month at "social picnics," and spend time with friends, neighbors, and family. (T. 19.) Treatment notes described Plaintiff as pleasant and cooperative. (*Id.*) As a result, the ALJ limited Plaintiff to only occasional interaction with coworkers, supervisors, and the general public to account for her moderate limitations in interacting with others. (T. 23.)

Lastly, the ALJ found Plaintiff had mild limitations in her ability to adapt or manage herself. (T. 19-20.) Plaintiff endorsed difficulties dressing and bathing however, she was also able to care for her pets, and prepare simple and ready-to-eat meals. (T. 19-20.)

In addition to the rationale provided at steps two and three, the ALJ discuss in detail the evidence in the record in formulating Plaintiff's mental RFC. Indeed, as observed by Defendant (Dkt. No. 12 at 15), despite arguing that the ALJ failed to cite evidence in support of the mental RFC, Plaintiff goes on to systematically discredit each of the reasons provided by the ALJ in support of his findings (Dkt. No. 11. at 14-17). First, as outlined above, the ALJ thoroughly considered Plaintiff's treatment notes, contemporaneous statements, and activities of daily living at steps two and three. Second, in his step four analysis, the ALJ outlined Plaintiff's mental health impairments, treatment Plaintiff received such as medication. (T. 21-22.) The ALJ noted the only administrative finding in the record provided by Dr. Juriga. (T. 22.) The ALJ concluded Plaintiff's moderate limitations in interacting with others restricted her to occasional interaction with coworkers, supervisors, and the general public. (T. 23.) The ALJ further concluded Plaintiff's moderate limitations in concentrating, persisting, and maintaining pace and in understanding, remember, or applying information "cause the

remaining restrictions stated in the [Plaintiff's] RFC." (*Id.*)  Therefore, the ALJ's properly formulating Plaintiff's mental RFC and substantial evidence supports his determination.

The ALJ has the duty to evaluate conflicts in the evidence.  *See* 20 C.F.R. § 404.1567(c)(i), 416.967(c)(i); *Monroe,* 676 F. App'x at 7 ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).  Plaintiff may disagree with the ALJ's conclusion; however, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise."  *Morris v. Berryhill*, 721 F. App'x 29 (2d Cir. 2018) (internal citations and quotations omitted); *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence).  As long as substantial record evidence supports the ALJ's determination of the facts, the Court must defer to the ALJ's decision.  *See Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)).  As the Supreme Court stated, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."  *Biestek,* 139 S. Ct. at 1154.

Overall, the ALJ did not err, as a matter of law, in formulating an RFC absent a medical opinion.  Here, the ALJ's mental RFC determination was supported by the record as a whole, including objective observations, Plaintiff's treatment and statements to providers, and Plaintiff's activities.  The ALJ provided sufficient analysis to link the evidence in the record to the ultimate RFC.  Therefore, the ALJ's mental RFC determination is upheld.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:    October 12, 2022

_____
William B. Mitchell Carter
U.S. Magistrate Judge